IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LAWRENCE SMITH                                                PLAINTIFF

v.                      Civil No. 04-1045

COLUMBIA COUNTY, ARKANSAS;
MS. PAULA MANESS; and
SHERIFF CALVIN KNIGHTON                            DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Lawrence Smith, a former inmate of the Columbia County Jail, brings this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds pro se and *in forma pauperis*.

Smith contends his constitutional rights were violated while he was an inmate of the Columbia County Jail when the defendants failed to provide him with adequate medical care. An evidentiary hearing was conducted on August 25, 2005. Following the presentation of evidence, the issues were taken under advisement pending preparation of this report and recommendation.

### I. BACKGROUND & EVIDENCE PRESENTED

Smith was incarcerated at the Columbia County Jail (CCJ) from June 18, 2003, until October 22, 2003, when he was transferred to the Arkansas Department of Correction. From materials submitted in connection with the summary judgment motion, it appears Smith was a pretrial detainee until September 4, 2003.

At the evidentiary hearing, the court heard the testimony of the following witnesses: (1) Paula Maness; (2) Kay May; and (3) John R. Butcher. After calling these witnesses, plaintiff

rested without testifying himself or calling further witnesses. Defendants elected not to call any witnesses. For purposes of discussion, we will summarize in the first person the testimony given.

### *Testimony of Paula Maness*

I am employed by the Columbia County Sheriff's Office as a registered nurse. I am also employed at the Magnolia County Hospital as a registered nurse.

I've been employed by Columbia County since mid-year 2001. I was employed by Columbia County during the time Smith was a prisoner there and I do remember him.

I'm employed part-time. Normally I go in about three days a week. If I'm not in the facility and my assistance is required, I have a pager. I'm paged frequently.

If an inmate has a medical request, there is a form they are given. I believe the forms are given out in the mornings. They write their request on the form. After the jailer receives it, the request is put in my box. When I go in, I look through the requests in the box. I pull out the inmates to see if they need to go to the doctor or if there is something I can do.

I provide the inmates with anything that is over-the-counter. I provide anything I can go to Wal-Mart and get.

If they need to go see a doctor, I call and make an appointment with the Rural Health Clinic. Our transport officer takes them.

Smith told me he had been having problems with his back for awhile. As far as I remember, he was able to get up and get around. I don't recall him filing a lot of grievances and medical requests.

Defendants' exhibit one is a medical request Smith submitted on June 23, 2003. He was complaining of pain in his right side down to his knee. Defendants' exhibit two is a request from

him dated June 30th. He is complaining of pain in his hip, knees, back, feet and toes. *Id.* He says there is something wrong with his bones. *Id.* He indicates his leg goes out.

Defendants' exhibit three is a request from Smith dated July 2nd. He complains of pain in his left hip, left knee, left leg, right arm, left foot, and his big toes. *Id.* He also says he has heart burn. *Id.*

Defendants' exhibit four is a request dated July 4th. He complains about pain in his right hip, right knee, and right leg. *Id.* He also states there is blood when he has a "bobo" (bowel movement). *Id.* He stated he needed to see a doctor. *Id.*

Defendants' exhibit five is a request dated July 7th. Smith complains of pain in his right side, right knee, right foot, right leg, big toes and of his left arm going numb. *Id.* He states he bleeds when he has a bowel movement. *Id.*

He indicated he had the same symptoms he mentioned in his other requests. I tried him on Advil and Tylenol. I told him if they gave him no relief, I would make an appointment at the Rural Health Clinic. I gave Advil during the day and Tylenol at night because Tylenol is gentler on the stomach.

Defendants' exhibit six is a request dated July 14th. Smith indicates the pain pills were helping with his headache, toothache, and small pains, but not with his right hip, knee, leg and back. *Id.* He also indicated he was still bleeding when he had a bowel movement. *Id.*

I responded: "see other request." *Id.* There must have been two requests I was answering at the same time.

AO72A
(Rev. 8/82)

Defendants' exhibit seven is a request dated July 16th. Smith states the pain pills help with the small pain but do nothing with the right hip, right knee, right leg, and the middle of his back. *Id.* He also said that he still having bleeding. *Id.*

My response was that I had made him an appointment with a dentist and would make him an appointment at the Rural Health Clinic. I told him to use the Preparation H suppositories.

Defendants exhibit eight is a request dated July 17th. I responded that he had an appointment to see the doctor and the dentist.

Defendants' exhibit nine is a request dated July 18th. Smith stated he had four teeth that wouldn't stop hurting. *Id.* He also said the pain pills helped with his teeth and other small pains but not with his right hip, right leg, and right knee. *Id.* He stated the pain was in his bones. *Id.*

The response was that he had appointments with the dentist and the doctor. I had given him everything I could give him. There was nothing else I could give him.

Defendants' exhibit ten is a request dated July 21st. Smith said there was something wrong with his bones and the doctor had said that he needed to find out what was wrong with his body. *Id.*

I responded that he had an appointment with the doctor next week. I decided to try him on Naproxyn. I told him he could still ask for Advil and Tylenol in between if it was needed. Naproxyn is a non-steroidal anti-inflammatory like Advil. I was just trying to relieve his pain until his appointment.

Defendants' exhibit eleven is a request dated July 24th. Smith indicated he had the same problems. This request was right before he had his appointment. I was still giving him Naproxyn.

Smith was seen by Kay May an Advanced Practice Nurse (APN) at the Rural Health Clinic

AO72A
(Rev. 8/82)

on July 30th. *Plff's Ex.* 2. May prescribed a Decadron injection, Flexeril, three times a day, for two weeks, Naproxyn, twice a day, for two weeks, the application of warm moist heat, and recommended a referral be made to a neurologist when Smith was released from jail. *Id.* The medications prescribed were prescription only.

My understanding from May was there was nothing more she could do and it was not an emergency or medically necessary at that time that Smith see a neurologist. It was something that could be taken care of at a later date.

She said there was nothing further she could do as far as medications that she could give. She said Smith needed to see a neurologist but that was something that could wait. It was nothing that needed to be taken care of at that time.

She didn't believe it was critical that Smith see a neurologist. If she believed it was critical for Smith to see a neurologist, she would have made an appointment.

When it is necessary, I do refer inmates. I've referred someone once or maybe twice.

I can't set up x-rays. I can't order tests. That is not within my job description. As far as I know, we send the inmates to the doctor's office and the county pays for it.

There was nothing else I could give Smith. I'm not there to give inmates medication. I do not personally do it.

I believe Smith had back problems before he got locked up by the Sheriff's Office. If someone is in the custody of the Columbia County Sheriff's Office when they get injured, then yes the county has to pay for it. But if it is something that occurs before the individual is in custody, I do not believe the county pays for it.

AO72A
(Rev. 8/82)

I do not know if this is part of the policy or not. If I have a question on policy, I refer it to Captain Reynolds or the Sheriff.

If I was referred to a neurologist, I would go see one. It was deemed not necessary to refer Smith to a specialist. It was deemed not necessary at that time. Ms. Kay May said yes Smith does need to see a specialist later on down the line but it was not anything that needed to be taken care of at the present time.

I don't know if I talked to May after the first or the second visit but I did talk to her. I talked to her once that I know of–possibly twice. I just don't remember. We always spoke over the phone.

This is a medical request Smith submitted on August 1, 2003. *Plaintiff's Exhibit* 1. It stated:

> I went to the doctor on the 30 she gave me a steroid shot and some different pain pills. My problem is still there. She said I need an operation and MRI or catskin, she said let her know if the pain pills don't work and they don't, the doctor herself seen how bad my hip, back, knee and leg are. She seen that I can't sit down right. Please talk to someone about getting me some help. I might wake up one morning and can't move. I need help for this pain. Mr. Smith heard the doctor talking about my back.

*Id*.

Maness responded: "You had the problems before you got locked up. I will try to manage the pain but I will not pay for an operation, MRI or CT scan. If you have a problem with this, you need to talk with Capt. Reynolds." *Id*.

I meant by my response that Smith did not need it at this time. I was going by what May told me. She said it was not necessary that Smith be referred to a neurologist at that time. My understanding is that if an inmate is injured before he comes to the jail his health care will not be paid for.

AO72A
(Rev. 8/82)

When inmates come into the facility on medication, we continue their medication and I don't say anything. We are just continuing their medication.

I could send Smith to a doctor. But as far as a specialist, I wouldn't. When, I replied that I wouldn't pay, what I meant was Smith would not be sent right now because it was not necessary.

I went by May's recommendation. It was not necessary at that time for Smith to be referred to a neurologist. I've been a nurse for eight years.

Payment decisions are made by the Sheriff and Captain Reynolds. I diagnose pain and determine if the inmate needs to see the doctor. I didn't believe it was necessary at this time for Smith to see a specialist.

Defendants' exhibit twelve is a medical request submitted on August 4th. Smith indicated the pain pills were hurting his stomach. *Id*. He also stated that he was to let the doctor know if the pills were not working. *Id*. The response was for him to see the response to the request dated August 5th. *Id*.

Defendants' exhibit thirteen is a medical request dated August 5th. In it Smith complains of continued pain and a burning in one spot in his back. *Id*. In response, I told him that an appointment would be made for him at the Rural Health Clinic. The medication he was on was not working so my recommendation was that he go to the doctor again.

Smith was seen by Kay May again on August 8, 2003. *Plff's Ex*. 3 at page 1. Smith was complaining that he hadn't improved. *Id*. She noted a decreased range of motion in his back. *Id*. She prescribed Ibuprofen, warm moist heat, and made the following notation: "Explained that I still recommend referral to othro or neuro–however, CCSO will not be responsible for the bill. Pt. is going to [visit with] his mother & see if the ins. she has on him will cover referral to neuro." *Id*.

AO72A
(Rev. 8/82)

May told me there was nothing more she could do. She said Smith needed to go see a specialist when he got out but that it was nothing that needed to be taken care of right then.

Defendants' exhibit fourteen is a request dated August 8th. Smith complained of continued symptoms. *Id.* I replied that he had a doctor's appointment on the 8th.

Defendants' exhibit fifteen is a request dated August 21st. Smith complained that his back, hip, and leg were getting worse. *Id.* He stated he was in pain and his fingers and toes were starting to go numb every night. *Id.* He also complained about gas. *Id.*

I responded that he should take Maalox for the heartburn. I stated I would get him something for constipation and would make him another appointment with the doctor.

Defendants' exhibit sixteen is a request dated September 1st. Smith asked why he couldn't get any more pain pills. *Id.* He stated they helped some with the pain and without them he would be going to the doctor every day. *Id.* In response, I restarted the Advil.

Defendants' exhibit seventeen is a request dated September 8th. Smith asked for his medical records to be gotten together and sent with him when he was transferred. *Id.* He also stated his stomach was hurting all the time and more of his fingers were going numb. *Id.* In response, I stated I would get it done. I got his records together so they could be sent to whatever facility he went to.

I didn't make a specific diagnosis with Smith. Other than he was complaining of pain. When I saw him, he was in very little pain. The APN nurse was not telling me he needed to see a specialist at that time.

AO72A
(Rev. 8/82)

*Testimony of Kay May*

In 2003 I was employed at the Rural Health Clinic at the Magnolia Hospital. I don't know if the Rural Health Clinic had a written contract with the Sheriff's Department. I'm an Advanced Practice Nurse or a nurse practitioner.

I don't remember anyone telling me Columbia County would not pay for treatment for inmates who had injuries or conditions that existed before their incarceration. I think I just thought that was the way it was. If an inmate came into the system with a pre-existing condition, its not that the condition wouldn't be treated but that the County wouldn't necessarily be responsible for paying for the treatment. This was just my understanding.

I can't tell you where I got that idea. I don't know that anyone ever specifically told me that they would not pay for something. This was just my understanding.

Inmates come in with an officer. The officer with the inmate usually knows what needs to be done. Sometimes I send written directions back to the jail. Sometimes I call the jail. I don't know how many times I talked to Maness.

I don't remember Smith. I'm just going by my documentation. When I saw him first, I noted he had a marked decrease in flexion. On a pain scale of one to ten, he stated his pain was a seven or an eight. He indicated his pain had been going on for about two months.

I gave him a steroid injection because pain is often caused by inflammation. I prescribed Flexeril, a muscle relaxer, and Naproxyn, an anti-inflammatory. I also suggested the use of warm moist heat. I didn't refer Smith to a neurologist. I recommended that he see one when he was released from jail. It was not urgent. It was just my recommendation. At that point, it was not the jail's decision. I just believed that at some point in time Smith would need to see a neurologist if his symptoms persisted.

-9-

If I feel something is urgent and needs to be referred at that time, then that is what I do. Any patient that continues to have symptoms, for whatever reason, and whether serious or minor, and I can't get the person to feel better or the symptoms to stop, I refer them to someone else to be further evaluated.

I've never had the Sheriff's Department refuse to do what I needed to do immediately. I don't know that the Sheriff's Department has ever refused a recommendation I've made if it is urgent. I have no idea what it costs to send someone to a neurologist. However, I can make a recommendation and that doesn't mean it needs to be done today.

I saw Smith for a second time for a recheck. *Plff's Ex.* 3. He reported no improvement. I noted a decreased range of motion in his back. Once again I recommended that if the symptoms persisted he should see a neurologist. There did not appear to be a need for an automatic referral to a neurologist.

I prescribed Ibuprofen. It is an anti-inflammatory. A basic treatment. Obviously the other medications didn't work so I was going to try this. If I was referred to a specialist, I would probably go if I felt there was a need.

I evidently felt like at some point in time Smith needed to be seen by a neurologist. Evidently the treatment I had given him was not working. Anytime I've tried a treatment and it does not work if the condition persists, whether it is a headache, a backache, or anything, I usually recommend that they go to see someone else. Not necessarily because the condition is life threatening but because I'm not able to stop that person's problem.

I can say I feel like I was not meeting the needs that Smith had. Now I could have kept giving him medication and that would have helped and I guess that is what we did. To obtain a definitive treatment and a solving of Smith's problem, I thought he probably needed to go to a

AO72A
(Rev. 8/82)

neurologist. But I didn't feel it was urgent. If I feel it is urgent, the appointment is made that day before the patient leaves the clinic. So, in Smith's case, I felt at some point he should see a neurologist.

I'm not saying Smith didn't have back pain. I'm not diminishing that. However, as far as there being any serious consequences to his back or the condition being life threatening, I didn't believe it was life threatening or debilitating or I would have referred him then. I usually always say that if this doesn't work, come back.

There are times I refer a patient to a specialist when I don't particularly think it is a life threatening or a serious problem but in that person's mind they think it needs to be evaluated further. So yes, I'll send that person to a specialist.

For example, if someone comes in with a lesion that is non-malignant and not life threatening but is of concern to the patient, I would say we can try creams and if that doesn't work I can refer you to a dermatologist. If I had believed it was absolutely critical or necessary, I would have referred the patient that day. On return visits, I try to repeat all recommendations and choices that we have discussed so we stay on the same page. If the creams don't work, at a later appointment, I would go ahead and make the referral.

### Testimony of John R. Butcher

I'm currently an inmate in the Arkansas Department of Correction. I was in the CCJ at the same time Smith was.

I know Smith. I knew him in jail. I went to school with him, played football with him, and graduated with him.

Smith is really out going. Smith doesn't have a reputation for saying he is hurt if he is not. If he says he is hurt, he is hurt.

When I first came into the jail, Smith was walking kind of funny. I asked him what was wrong. He stated he was having back problems. I told him he needed to write a medical request to the nurse.

We were in the same cell for about six or seven days. After that, I was moved to a different cell. While we were in the same cell, I played cards. Smith pretty much stayed on his rack. When we went outdoors Smith didn't play basketball.

## II. DISCUSSION

As noted above, Smith was a pretrial detainee during most of his incarceration at the CCJ. Thus, his claims are more properly analyzed under the due process clause of the Fourteenth Amendment than the Eighth Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004). "The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999)(citation omitted). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)(analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence

AO 72A
(Rev. 8/82)

deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

We conclude Smith has failed to establish the defendants were deliberately indifferent to his serious medical needs. The uncontradicted testimony is that May, an Advanced Practice Nurse, did not believe there was an immediate need to refer Smith to a neurologist. Instead, in May's opinion, while Smith would at some point need to be evaluated by a neurologist, she did not believe the evaluation needed to occur right away or that any delay in Smith's being evaluated would have a detrimental effect on Smith's physical condition.

May advised Maness, a registered nurse, that there was no immediate need for a referral to a neurologist and she relied on May's medical judgment in assessing the situation. Smith disagrees with the assessment of May. However, his disagreement with the decision does not

state a claim of constitutional dimension. *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)(medical decision not to order x-rays does not constitute cruel and unusual punishment); *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)(prison officials do not violate the Eighth Amendment when, in exercise of their professional judgment, they refuse to implement inmate's requested course of treatment); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992)("Whether and when routine treatment should be augmented with the assistance of a specialist involves an exercise of medical judgment that is generally not subject to redress under the Eighth Amendment."). Nor does a decision to delay a referral to a specialist while efforts 6are undertaken to treat or correct the medical problem equate to deliberate indifference. *See e.g., Jolly v. Knudsen*, 205 F.3d 1094, 1097 (8th Cir. 2000)(Dr. Knudsen saw Mr. Jolly on numerous occasions following the dosage changes, attempted various corrective actions, and referred Mr. Jolly to a specialist.); *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997)("Although the prison doctors may not have proceeded from their initial diagnosis to their referral to a specialist as quickly as hindsight perhaps allows us to think they should have, their actions were not deliberately indifferent. The doctors made efforts to cure the problem in a reasonable and sensible manner.").

Smith contends the decision not to refer him to a specialist was based not on the medical judgment of nurses May or Maness but was instead based on the CCJ's alleged policy of not paying for medical treatment of inmates' pre-existing conditions. The Constitution clearly establishes the right of both pretrial detainees and convicted inmates to receive adequate medical care for their serious medical needs. The Constitution does not distinguish between medical care provided for pre-existing conditions and conditions that arose after incarceration.

-14-

Whether a medical need is serious and what medical care is adequate is obviously dependent on the unique facts of each condition or situation presented. Delay in medical treatment may be for a number of reasons. While, it has been held that "delaying prescribed treatment for a serious medical need for several weeks for a nonmedical reason may violate an inmate's constitutional rights," *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994). *Cf. Jones v. Johnson*, 781 F.2d 769 (9th Cir. 1986)(classification of hernia as elective surgery did not insulate county from Eighth Amendment duty to provide proper medical care), it has also been recognized that jail officials may properly consider the costs and benefits of treatments as well as the length of incarceration. *See e.g., Delker v. Maass*, 843 F. Supp. 1390, 1399-1401 (D. Or. 1994).

Although the court was troubled by Maness' testimony that she did not believe the jail was required to provide treatment, other than pain management, for pre-existing medical conditions, and May provided somewhat similar testimony although she could not state why she believed this to be true and she was not employed by the detention center, we believe the testimony established the decision not to refer Smith to a neurologist was based on medical judgment. Detention officials "may establish general guidelines but the ultimate treatment decision must be made on a case-by-case basis, giving due consideration to the inmate's subjective complaints of pain and restricted activity, and also inmate's psychological needs, where appropriate." *Delker*, 843 F. Supp. at 1399. We believe the decision in this case was based on May's evaluation of Smith's medical condition.

-15-

### III.  CONCLUSION

I therefore recommend that judgment be entered in the defendants' favor and that this case be dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of November 2005.

                                            /s/ Bobby E. Shepherd
                                            UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)